Filed 1/19/22  P. v. Lewis CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B313176 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA142561) |
| v. | |
| GEORGE LEWIS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Sean D. Coen, Judge.  Affirmed.

Mark D. Lenenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

George Lewis appeals from a postjudgment order denying his petition for resentencing under Penal Code section 1170.95[1] as to his 2016 conviction of first degree murder. Lewis contends, the People concede, and we agree the trial court erred by failing to appoint counsel and afford the parties an opportunity to file briefs, and by summarily denying Lewis's petition before issuing an order to show cause and holding an evidentiary hearing pursuant to section 1170.95, subdivision (d). However, the error is harmless because Lewis is ineligible as a matter of law. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Evidence at Trial*

We described the 2016 killing of Jose Raya and the attempted murder of Reann Lott in our prior opinion in *People v. Booker* (2020) 58 Cal.App.5th 482 (*Booker*). On the evening of December 17, 2016, Lott and Raya drove in Lott's car to a liquor store to buy beer. As Lott walked to the entrance of the liquor store, she noticed a white car with tinted windows parked in a lot on the side of the building. Inside the liquor store, Raya talked to a friend he saw inside the store while Lott walked into another aisle to get beer.

Lewis and codefendants Damon Lamar Booker, William Weaver, Jeremiah Stone, and Marcus Posey entered the store together, then separated and moved throughout the store. As the men spoke to one another, Lott heard the men use a slang word commonly used by members of the Crips street gang. The men

---

[1]     All statutory references are to the Penal Code.

stared at Raya, who was talking to his friend. Raya's friend asked the men where they were from. One of the men answered "Fruit Town," to which Raya's friend responded he "was cool with them." Raya was not a member of any gang. Shortly thereafter, the five men left together without buying anything. Surveillance video of the interior of the liquor store taken the night of the shooting showed Booker, Lewis, Weaver, Stone, and Posey in the store.

When Raya and Lott left the store, the white car with tinted windows was no longer parked in the lot. The two returned to Lott's car. Raya drove, and Lott was in the front passenger seat. As they drove down 130th Street toward Lott's home, Lott noticed a white car following closely behind their car. Lott said to Raya, "[T]hey look like they're about to hit us." Raya stopped at a stop sign or stop light. The white car pulled up next to Lott's car on the driver's side "within seconds" of Raya stopping the car. Lott recognized the car was the same white car from outside the liquor store. Raya told Lott to duck down, which she did. As she ducked, Lott saw a hand emerge from the front passenger window of the white car, and she heard five shots fired at Lott's car. Lott was not hit, but Raya was killed. The white car and a black car in front of it drove off.

Booker, Lewis, Weaver, Stone, and Posey were later arrested in connection with the murder. In his recorded interview with two police detectives, Lewis admitted he knew Booker, Weaver, Stone, and Posey, and they were all members of the Poccet Hood gang. But Lewis claimed he was in Las Vegas on the night of the shooting. On January 18, 2018 Deputy District Attorney Brian Kang and Los Angeles County Sherriff's

Department Detective Kasey Woodruff interviewed Posey.[2] Posey admitted that at about 5:00 on the night of the shooting, he, Stone, Weaver, Booker, and Lewis went in three cars to the liquor store. The liquor store was located on the border of Poccet Hood and rival gang territory. When Posey entered the store, he went down an aisle toward the back of the store while Booker, Weaver, and Lewis went toward the cash register where "the guy banged on them or whatever." Posey did not hear Booker, Lewis, Weaver, or Stone say anything in response.

When they left the store, Posey and Stone got in Stone's car; Weaver into his car; and Booker and Lewis into Booker's car, with Booker in the driver's seat. Weaver pulled out, and Stone followed. They turned on 130th Street, where Booker had pulled his car over. Lewis and Booker switched seats, with Lewis now in the driver's seat. Lewis also took off his gray sweatshirt and gave it to Booker, who put it on. According to Posey, a gang member would switch clothing with another "[t]o cover [his] self." A white car then passed by, and all three cars followed it down 130th Street, first Lewis, then Weaver, then Stone. At the intersection of 130th Street and Wilmington Avenue, Booker

---

[2] At the outset of the interview, the deputy district attorney presented Posey with a proffer agreement, which Posey signed. At trial, Posey answered "I don't remember" to every question the prosecutor asked regarding the night of December 17, 2016. Weaver and Stone testified after being offered use immunity. However, Weaver responded to all the prosecutor's questions with "I don't know," "I don't remember," or "I plead the 5th." When the prosecutor asked Stone about the liquor store incident, Stone repeatedly responded, "I can't recall, sir."

stuck his arm out of the window and "started shooting . . . into the white car." Posey heard five to seven shots. The three cars left the scene.

Lewis testified in his defense that he never lived in Poccet Hood territory but began associating with the gang during high school. Lewis admitted he was a member of the gang and the liquor store was "in the hood." On the day of the shooting, the five men went to the liquor store, but Lewis claimed he drove his own car, a burgundy Impala. Booker, Stone, and Weaver drove their own cars and followed each other to the store. Lewis parked on the street. Lewis did not remember hearing anyone in the liquor store say "[w]here you from." When Lewis left, he did not talk to his friends, and he drove by himself to the house of the father of his sister's child. Lewis did not hear any gunshots. But he admitted speaking separately with Booker, Weaver, and Stone by phone "within minutes" after the shooting. Lewis returned to Las Vegas after staying two days in California.

B.    *The Verdict and Sentencing*

The jury found Booker and Lewis guilty of first degree murder; attempted willful, deliberate, and premeditated murder; and shooting at an occupied vehicle. The jury also found true that Booker and Lewis committed the offenses for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)), and Booker or a principal personally used a firearm, personally and intentionally discharged a firearm, and personally and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subds. (b), (c), (d) & (e)(1)). After a bifurcated trial, the trial court found true the prior conviction allegations against Booker and Lewis. The court

5

sentenced Booker and Lewis to aggregate terms of 170 years to life in state prison.

C.     *Lewis's Appeal*

Lewis and Booker appealed, arguing, among other grounds, that the trial court prejudicially erred in instructing the jury on the "kill zone" theory of concurrent specific intent to prove attempted murder in light of the Supreme Court's holding in *People v. Canizales* (2019) 7 Cal.5th 591, 596-597). We agreed the trial court committed prejudicial error in instructing the jury on the kill zone theory and reversed the attempted murder convictions. We otherwise affirmed. (*Booker, supra*, 58 Cal.App.5th at p. 486).[3]

D.     *Lewis's Petition for Resentencing and the Superior Court's Ruling*

On May 19, 2021 Lewis, representing himself, filed a form petition for resentencing seeking to vacate his murder conviction and be resentenced in accordance with recent statutory changes relating to accomplice liability for murder. In his petition, Lewis declared he "was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine," and he "could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019." He also checked the box on the form stating he was not the actual killer and did not act with the intent to kill. Lewis requested the court appoint him

---

[3]     It does not appear from the record that Booker and Lewis were retried for the attempted murders.

counsel during the resentencing process. Lewis attached to his petition multiple exhibits, including his declaration (stating he was the driver, not the shooter), the jury instructions on murder and aiding and abetting, and the verdict forms.

On June 1, 2021 the superior court, without appointing counsel for Lewis, summarily denied the petition, finding Lewis ineligible for resentencing under section 1170.95. The court explained, "The petitioner was convicted by a jury of first degree murder on December 28, 2018. As petitioner points out in his moving papers, the only theory of first degree murder was willful, deliberate, and premediated murder. The jury was never instructed as to natural and probable consequences. The jury was never instructed as to felony murder. The only way the jury could have found the defendant guilty of murder was by way of an express malice theory. The only way the jury could have found Petitioner guilty of first degree murder is by way of the same theory. Pursuant to Penal Code Section 1170.95(a) the petitioner is not eligible for resentencing." (Capitalization omitted.)

Lewis timely appealed.

## DISCUSSION

A.   *Senate Bill No. 1437*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule. (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842-843, 847-848 (*Gentile*).) New

7

section 188, subdivision (a)(3), provides, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."  New section 189, subdivision (e), in turn, limits the felony-murder rule exception to the malice requirement for aiders and abettors to circumstances where the People prove the defendant "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Senate Bill 1437 also provides a procedure in new section 1170.95 for an individual convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder under Senate Bill 1437's changes to sections 188 and 189.  (*Lewis, supra*, 11 Cal.5th at p. 959; *Gentile, supra*, 10 Cal.5th at pp. 842-843.)  If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she was convicted of murder and could not now be convicted of murder because of changes to section 188 or 189 (§ 1170.95, subd. (b)(1)(A)), the court must appoint counsel to represent the petitioner upon his or her request pursuant to section 1170.95, subdivision (b)(3).[4]  (*Lewis*, at pp. 959-960.)

---

[4]     Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2) amended section 1170.95, effective January 1, 2022, to, among other changes, (1) apply section 1170.95 to convictions for voluntary manslaughter and attempted murder; (2) add new subdivision (b)(3), which requires the appointment of counsel at the prima facie review stage if requested; (3) affirm the standard

Further, upon the filing of a facially sufficient petition, the court must direct the prosecutor to file a response to the petition and permit the petitioner to file a reply, and the court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (See § 1170.95, subd. (c); *Lewis*, at p. 964.)

In determining whether the petitioner has made a prima facie showing he or she is entitled to relief under section 1170.95, subdivision (c), "[l]ike the analogous prima facie inquiry in habeas corpus proceedings, '"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Lewis, supra*, 11 Cal.5th at p. 971.)

If the petitioner makes a prima facie showing under section 1170.95, subdivision (c), the court must issue an order to show cause and hold a hearing "to determine whether to vacate the murder conviction and to recall the sentence and resentence

---

of proof at the order to show cause hearing is proof beyond a reasonable doubt; and (4) clarify that "a finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."

the petitioner on any remaining counts." (§ 1170.95, subd. (d)(1).) If a hearing is held, "[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3); see *Gentile, supra*, 10 Cal.5th at p. 853.)

B. *The Trial Court Erred in Summarily Denying Lewis's Petition Without Appointing Counsel and Affording an Opportunity for Briefing, but the Error Was Harmless*

Lewis contends, the People concede, and we agree the trial court erred in summarily denying his petition without first appointing him counsel and affording his attorney an opportunity to file a brief because Lewis had filed a facially sufficient petition. (*Lewis, supra*, 11 Cal.5th at p. 963 ["[P]etitioners who file a complying petition requesting counsel are to receive counsel upon the filing of a compliant petition."].) Because Lewis checked all the boxes on his form petition necessary to show he was eligible for relief, the superior court erred by denying his petition without first appointing counsel.

However, the superior court's failure to appoint counsel at the prima facie stage of review is state law error reviewable under the standard in *People v. Watson* (1956) 46 Cal.2d 818, 836, in which we review whether the defendant has "'demonstrate[d] there is a reasonable probability that in the absence of the error he . . . would have obtained a more favorable result.'" (*Lewis, supra*, 11 Cal.5th at p. 974; see *People v. Farfan* (2021) 71 Cal.App.5th 942, 956 [error in not appointing counsel before denying facially sufficient petition was harmless because defendant was ineligible for relief as a matter of law based on jury's 2016 felony-murder-special-circumstance finding]; *People v.*

10

*Mancilla* (2021) 67 Cal.App.5th 854, 864, 866 [error in not appointing counsel before denying facially sufficient section 1170.95 petition was harmless error because conviction of provocative act murder necessarily required proof defendant personally harbored malice].) Here, the superior court's error was harmless because Lewis was ineligible for relief as a matter of law.

Lewis contends the superior court's error was not harmless because the jury was instructed with CALJIC No. 8.25.1 on drive-by murder, which allowed the jury to convict Lewis based on imputed malice in light of the instruction's requirement that the perpetrator intend to inflict death, without requiring that an aider and abettor intend to kill. The trial court instructed the jury that "[m]urder which is perpetrated by means of discharging a firearm from a motor vehicle intentionally at another person outside of the vehicle when the perpetrator specifically intended to inflict death, is murder of the first degree. [¶] The essential elements of drive-by murder are: [¶] 1. The defendant committed the crime of murder; [¶] 2. The defendant perpetrated the murder by means of discharging a firearm from a motor vehicle intentionally at another person outside of the vehicle; and [¶] 3. The defendant specifically intended to kill a human being."[5]

Lewis argues that CALJIC No. 8.25.1, by requiring that the "perpetrator specifically intended to inflict death," allows a

---

[5] The jury was also instructed with CALJIC 8.20 on deliberate and premeditated murder with express malice aforethought and CALJIC No. 8.25 on murder by means of lying in wait, but Lewis concedes that if he was convicted on either of these theories, he would not be entitled to relief.

11

defendant to be convicted of a drive-by-murder based on his or her aiding and abetting a shooter who (as the perpetrator) intended to kill, even if the aider and abettor did not have an intent to kill. It is true that the drive-by murder instruction refers to the intent to kill of the perpetrator (the shooter). But Lewis could only be convicted as an aider and abettor if, as the trial court's instruction of the jury with CALJIC No. 3.01 explained, he "aid[ed], promote[d], encourage[d] or instigate[d] the commission of the crime" with knowledge of the unlawful purpose of the perpetrator and "[w]ith the intent or purpose of committing or encouraging or facilitating the commission of the crime." Thus, as a direct aider and abettor, he must have shared the intent of the perpetrator (Booker) to kill.

Because the jury was not instructed on felony murder or the natural and probable consequences doctrine, Lewis's conviction as a direct aider and abettor of the murder of Raya with the intent to kill is a still-valid theory under Senate Bill No. 1437. (See *People v. Daniel* (2020) 57 Cal.App.5th 666, 677 [because the jury was not instructed on felony murder or the natural and probable consequences doctrine, error in not appointing counsel was harmless error], review dismissed, cause remanded (Dec. 1, 2021, No. S266336).) Therefore, the superior court's error in failing to appoint counsel and afford counsel an opportunity to file a brief supporting Lewis's petition was harmless because there is no "reasonable probability that in the absence of the error he . . . would have obtained a more favorable result.'" (*Lewis, supra*, 11 Cal.5th at p. 974; see *People v. Watson, supra*, 46 Cal.2d at p. 836.)

12

## DISPOSITION

The order denying Lewis's petition for resentencing under section 1170.95 is affirmed.

FEUER, J.

We concur:

PERLUSS, P. J.

SEGAL, J.